UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEONARDO CAMACHO RAMOS,
    Petitioner,

v.
                             Case No. 8:23-cv-1112-TPB-JSS
                             Case No. 8:21-cr-231-TPB-JSS

UNITED STATES OF AMERICA,
    Respondent.

_____

**ORDER**

Leonardo Camacho Ramos moves under 28 U.S.C. § 2255 to vacate his conviction and sentence for conspiring to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, for which, after pleading guilty, he is currently serving a below guidelines sentence of 90 months. He challenges his conviction and sentence on six grounds. Camacho Ramos is entitled to no relief because his claims are untimely and lack merit.

## I.    Background

Camacho Ramos pleaded guilty with a plea agreement to having conspired to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a) and 70506(a) and (b) and 21 U.S.C. §§ 960 (b)(1)(B)(ii). (Crim. Doc. 50) Camacho Ramos admitted the following facts that support his guilty plea (Crim. Doc. 50 at 18–20):

1

On or about July 1, 2021, a maritime patrol aircraft (MPA) sighted a go fast vessel (GFV) in the international waters of the eastern Pacific Ocean, approximately 94 nautical miles northwest of Malpelo, Colombia. The U.S. Coast Guard Cutter JAMES, was patrolling in the vicinity, diverted to intercept, and eventually launched its embarked helicopter and small boat to pursue the vessel.

During the pursuit, the GFV jettisoned three (3) bales containing approximately ninety (90) kilograms of cocaine into the water.  Despite warning shots and repeated request for the vessel to stop, the GFV continued to flee.  Eventually, the helicopter successfully disabled the fleeing GFV.

The JAMES small boat gained positive control of the GFV, and the embarked Coast Guard law enforcement boarding team conducted a right of visit (ROV) boarding to determine the nationality, if any, of the subject vessel. The defendants, Leonardo Camacho Ramos, Saturnino Lopez Gonzalez, and Jorge Ivan Cordoba Palacios were the three (3) crewmembers of the subject GFV. During the ROV boarding and in response to questioning by the Coast Guard boarding team, the defendant, Leonardo Camacho Ramos, identified himself as the master of the vessel and made a verbal claim of Colombian nationality for the vessel.

Pursuant to the United States-Colombia Bilateral Agreement, the U.S. Coast Guard approached the Government of Colombia and requested confirmation of the registry and nationality of the subject GFV. The Colombian government responded that it could not confirm the claimed nationality and registry of the subject vessel. Therefore and in accordance with 46 U.S.C. § 70502(c)(1)(A) and (d)(1)(C), the GFV is a vessel without nationality and therefore a vessel subject to the jurisdiction of the United States. At the time of interdiction by the Coast Guard, the GFV was seaward of the territorial seas of any nation and in international waters. The GFV was not flying a flag and had no other indicia of nationality.

Asked for the purpose of his voyage, the master of the GFV, the defendant, Leonardo Camacho Ramos,

pointed at forty-three (43) bales located on the deck of the GFV and said "You're looking at it." The Coast Guard small boat recovered the three (3) jettisoned bales from the water. Upon inspection, the packaging on the jettisoned bales matched the bales found onboard the GFV.

The Coast Guard boarding team seized a total of forty-six (46) bales containing approximately 1,424 kilograms of cocaine. Forty-three (43) of those bales, containing approximately 1,334 kilograms of cocaine, were found in plain view onboard the GFV; the other three (3) bales, containing approximately ninety (90) kilograms of cocaine, were recovered from the water. The boarding team conducted two (2) Narcotics Identification Kit (NIK) field tests on the seized contraband, both of which tested positive for cocaine.

The defendant, Leonardo Camacho Ramos, willingly agreed to transport forty-six (46) bales containing approximately 1,424 kilograms of cocaine aboard the GFV with his codefendants and others. The purpose of this agreement was to smuggle this cocaine through international waters and distribute the cocaine to other persons. The defendant knew that the bales onboard the GFV contained five (5) or more kilograms of cocaine and knew that the planned voyage was a drug smuggling venture.

The Probation Office calculated a total offense level of 35 and a guidelines range of 168 to 210 months.  Before sentencing, the United States moved under U.S.S.G. § 5K1.1 for a two-level reduction in Camacho Ramos's offense level for his substantial assistance.  (Crim. Doc. 80)  The district court granted the motion, which resulted in a guidelines range of 135 to 168 months. (Crim. Doc. 99 at 4–5)  At sentencing, the district court departed downward from the guidelines range and sentenced Camacho-Ramos to 90 months. (Crim. Doc. 92)  He filed no appeal.

## II.    Analysis

Camacho Ramos now moves to vacate his conviction and sentence. The district court generously reads Camacho Ramos's motion as raising six grounds for relief. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). Camacho Ramos challenges the constitutionality of the Maritime Drug Law Enforcement Act (MDLEA) as applied to him (Ground One) and claims his prosecution under the MDLEA violates his due process rights (Ground Two). He claims that, while in the custody of the Coast Guard, his right against self-incrimination was violated, and he suffered cruel and unusual punishment. (Grounds Three and Four). He complains that he was not brought before a court within 72 hours of his arrest (Ground Five), and claims that counsel provided constitutionally ineffective assistance in failing to challenge his prosecution on these grounds (Ground Six).

The United States responds that Camacho-Ramos's claims are untimely, procedurally defaulted, and meritless. (Civ. Doc. 6) Camacho-Ramos filed no reply, although he was afforded an opportunity to do so. (Civ. Doc. 3 at 1, directing Camacho Ramos to file his reply not later than September 21, 2023, or thirty days after the United States responds to the § 2255 motion, whichever occurs later).

**A.     Camacho Ramos's claims are untimely.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations for filing a § 2255 motion to vacate or correct sentence.  28 U.S.C. § 2255(f).  The one-year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by government al action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Camacho Ramos's judgment of conviction was entered on March 16, 2022, and he filed no appeal. (Crim. Doc. 92)  If a defendant does not appeal, his conviction becomes final upon the expiration of the period for filing a timely notice of appeal, or 14 days after the entry of judgment.  Fed. R. App. P. 4(b)(1)(A); *Akins v. United States*, 204 F.3d 1086, 1089 n.1 (11th Cir. 2000).  Camacho Ramos's judgment became final 14 days after entry of judgment, on March 30, 2022.  Therefore, he had until March 30, 2023, to file his § 2255 motion.  He did not file his § 2255 motion until May 12, 2023, more than one

month after the filing deadline passed. *See Washington v. United States*, 243 F. 3d 1299, 1300 (11th Cir. 2001) (pleadings filed by an incarcerated petitioner are deemed filed on the date they are placed into the prison's official mail system). Thus, Camacho Ramos's § 2255 motion is untimely under § 2255(f)(1).

Camacho Ramos does not argue that an impediment prevented him from timely filing his § 2255 motion, as required by § 2255(f)(2). He cites neither a newly recognized right made retroactive under §2255(f)(3) nor any new facts he discovered through the exercise of due diligence as required by § 2255(f)(4). When asked to explain why the one-year statute of limitations in § 2255(f) does not bar his claims, Camacho Ramos writes simply "timely" and offers no explanation for the late filing of his § 2255 motion. (Civ. Doc. 1 at 12)  Finally, he offers no argument or facts to suggest that he is entitled to equitable tolling of the filing deadline. Accordingly, Camacho Ramos's motion under § 2255 must be dismissed as untimely.

**B.    Camacho Ramos's claims lack merit.**

Even if Camacho Ramos timely asserted his claims, he is entitled to no relief because his claims lack merit.[1]

---

[1] Although the United States correctly argues that Camacho Ramos procedurally defaulted his claims in Grounds One through Five by not raising them on direct appeal, the district court rejects those claims as meritless. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); *Garrison v. United States*, 73 F.4th 1354, 1359 n.9 (11th Cir. 2023) (same).

### 1.   Ground One

Camacho Ramos challenges the United States' proof that the vessel was stateless and therefore subject to the jurisdiction of the United States.  (Civ. Doc. 1 at 14–19)  He argues that the Coast Guard was required to accept the crewmembers' assertions that the vessel was Colombian, and he argues, the Colombian government's response that it could neither confirm nor deny the nationality of the vessel was insufficient to permit the district court to conclude that the vessel was without nationality.  (*Id.* at 14–16)

The MDLEA makes it a crime to possess with intent to distribute a controlled substance or conspire to do so "[w]hile on board a covered vessel." 46 U.S.C. § 70503(a).  A vessel is covered by the MDLEA if it is "subject to the jurisdiction of the United States."  *Id.* § 70503(e)(1).  A vessel is "subject to the jurisdiction of the United States" if it is "a vessel without nationality."  *Id.* § 70502(c)(1)(A).  As relevant here, a vessel is "without nationality" when the country of claimed registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C).

Jurisdictional issues "are preliminary questions of law to be determined solely by the trial judge."  46 U.S.C. § 70504.  "It is fundamental that parties may not stipulate to federal jurisdiction[;]" however, parties may "stipulate to facts that bear on [the court's] jurisdiction."  *United States v. Iguaran*, 821 F.3d

1335, 1337 (11th Cir. 2016) (quotations omitted).   "A court's task is to determine whether the stipulated facts give rise to jurisdiction." *Id.*

Camacho Ramos's claim lacks merit because stipulated facts establish the district court's jurisdiction over the vessel.  Camacho Ramos admitted that (1) he was the master of the vessel, (2) the vessel had no indicia of nationality, (3) he made a verbal claim of Columbian nationality for the vessel, and (4) the Colombian government could not confirm the vessel's nationality or registry. (Crim. Doc. 100 at 29–32)  Such stipulated facts establish that the vessel was without nationality and therefore subject to the jurisdiction of the United States.  *See United States v. Gruezo*, 66 F.4th 1284, 1290 (11th Cir. 2023) (ruling that the defendant's stipulations "alone [are] sufficient . . . to affirm . . . that the vessel was subject to the jurisdiction of the United States").  And, by pleading guilty, Camacho Ramos waived any claim that there was insufficient evidence to show that the vessel was "without nationality" and "subject to the jurisdiction of the United States." *See United States v. Ruiz*, 811 F. App'x 540, 543 (11th Cir. 2020) ("By pleading guilty, [the defendant] admitted that the vessel was in international waters and was without a nationality [and] relinquished his challenges to the evidence showing that the vessel was stateless."); *United States v. Forbes-Suarez*, 553 F. App'x 913, 914 (11th Cir. 2014) (holding that, by pleading guilty, the defendant waived his as-applied challenge to the constitutionality of the MDLEA).

Camacho Ramos's reliance on *United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022), *reh'g en banc granted, opinion withdrawn*, 38 F.4th 288 (1st Cir. 2022), *and on reh'g en banc*, 84 F.4th 400 (1st Cir. 2023), which held that Congress exceeded its power by defining a "vessel without nationality" to include vessels for which the crew claimed a nationality but the nation neither confirmed nor denied, is misplaced. The First Circuit withdrew the panel opinion on which Camacho-Ramos relies. Therefore, the opinion is "officially gone" and has "no legal effect whatsoever." *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002). Furthermore, the Eleventh Circuit has "decline[d] to adopt the holding of the First Circuit's now-withdrawn opinion in *Davila-Reyes* given our precedent concluding that other provisions of the MDLEA are constitutional under the Felonies Clause." *United States v. Santos-Santana*, No. 22-10367, 2022 WL 17973602, at *7 (11th Cir. Dec. 28, 2022).

### 2.     Ground Two

Camacho Ramos claims that his prosecution under the MDLEA violates his due process rights. (Civ. Doc. 1 at 18) He offers no factual support or explanation for this meritless claim. The constitutionality of the MDLEA is well established by circuit precedent. *See United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016) (finding that Congress did not exceed its authority by enacting the MDLEA); *United States v. Campbell*, 743 F.3d 802,

805 (11th Cir. 2014) (same). "The Fifth Amendment's Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020). Camacho Ramos's MDLEA conviction does not violate his due process rights. *See id.* (finding that "the defendants' MDLEA convictions . . . do not violate their due process rights even if their offenses lack a 'nexus' to the United States"). Furthermore, Camacho Ramos waived this claim by pleading guilty. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

### 3.      Ground Three

Camacho Ramos claims that he was "question[ed] . . . without *Miranda* warnings" thereby violating his right against self-incrimination. (Civ. Doc. 1 at 19)  He offers no factual support or explanation for this meritless claim. The Eleventh Circuit "'has long recognized that the Coast Guard's routine stop, boarding[,] and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings.'" *United States v. Napa Moreira*, 810 F. App'x 702, 706 (11th Cir.

10

2020) (quoting *United States v. Rioseco*, 845 F.2d 299, 302–03 (11th Cir. 1998))

(rejecting the defendant's constitutional challenge to the MDLEA "on the basis

that it violates the Fifth Amendment privilege against self-incrimination as

applied in *Miranda*").   Furthermore, Camacho Ramos waived this claim by

pleading guilty.  *See Wilson*, 962 F.2d at 997; *see also Gruezo*, 66 F.4th at 1292

(concluding that, by pleading guilty, the defendant waived his claim that his

MDLEA conviction violated his *Miranda* rights); *Franklin v. United States*, 589

F.2d 192, 194–95 (5th Cir. 1979) (finding that a guilty plea waives claims

regarding *Miranda* warnings, coerced confessions, perjury, and illegal

searches and seizures in a § 2255 proceeding).

### 4.    Ground Four

Camacho Ramos claims that "awful conditions at the Coast Guard ship

violated his constitutional rights against cruel and unusual punishment."

(Civ. Doc. 1 at 15) He complains that he was "chained, sleeping on the floor

without a cell or room, and [experienced] conditions that were against the basic

human rights of a prisoner."  (*Id.* at 19)  Again, Camacho Ramos waived this

claim by pleading guilty.  *See Wilson*, 962 F.2d at 997; *Class v. United States*,

538 U.S. 174, 182 (2018) ("A valid guilty plea also renders irrelevant—and

thereby prevents the defendant from appealing—the constitutionality of case-

related government conduct that takes place before the plea is entered.").

### 5.    Ground Five

Camacho Ramos claims that he was not brought before a court within 72 hours of his arrest.  (Civ. Doc. 1 at 18)  He claims that he was on the Coast Guard ship for 14 days and describes his detention during that time as "kidnapping."  (*Id.* at 18–19)  Again, Camacho Ramos waived this claim by pleading guilty.  *See Wilson*, 962 F.2d at 997; *United States v. Castillo*, 899 F.3d 1208, 1214 (11th Cir. 2018) (guilty plea foreclosed argument that 19-day delay before the defendant appeared before a magistrate judge was unreasonable and violated due process).  Camacho Ramos "does not dispute the validity of his plea, so he cannot complain about the specific facts of his detention." *Id.*

### 6.    Ground Six

Camacho Ramos vaguely claims that counsel failed to advise him about his right to a speedy trial "or any other rights that a defendant should have had in a U.S. Federal Court."  (Civ. Doc. 1 at 15)  In one sentence, he claims that counsel was ineffective for "not [raising] any of these violations at his plea hearing or his sentencing hearing and for coercing verbally petitioner to plead guilty to an unconstitutional law and or an unconstitutional way that the law was enforce[d]."  (*Id.* at 19)

To prevail on a claim of ineffective assistance of counsel, the petitioner must show that (1) counsel's representation fell below an objective standard of

reasonable professional assistance; and (2) the petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984). To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Camacho Ramos demonstrates neither that counsel performed deficiently nor that he was prejudiced by counsel's performance. *See Tejada v. Dugger*, 941 F.3d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate ineffective assistance of counsel). As explained *supra*, his challenges to the constitutionality of his conviction and sentence lack merit, and "[c]ounsel cannot be labeled ineffective for failing to raise issues which have no merit." *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990). Furthermore, by pleading guilty, Camacho Ramos waived claims based on events that occurred before entry of the plea, including a claim of ineffective assistance of counsel. *See Wilson*, 962 F.2d at 997.

### III.    Conclusion

Camacho Ramos's motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 1) is **DENIED**. The clerk is directed to enter a judgment against Camacho Ramos, terminate any pending motions, close this case, and enter a copy of this order in the criminal case.

**CERTIFICATE OF APPEALABILITY**

**AND LEAVE TO APPEAL IN FORMA PAUPERIS**

Camacho Ramos is not entitled to a certificate of appealability ("COA"). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Camacho Ramos must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Camacho Ramos is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

A certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is **DENIED**. Camacho Ramos must obtain permission from the circuit court to appeal in forma pauperis.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 4th day of April, 2024.

**TOM BARBER**
**U.S. DISTRICT JUDGE**